Gust PAHOULIS

v.

UNITED STATES of America.

Civ. No. 13696.

United States District Court
W. D. Pennsylvania.

Aug. 9, 1956.

George J. Barco, Barco & Barco, Meadville, Pa., Welch, Mott & Morgan, Washington, D. C., for plaintiff.

David A. Wilson, Jr., Tax Division, U. S. Dept. of Justice, Washington, D. C., D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., for defendant.

MARSH, District Judge.

This case involves the issue whether a community television antenna service is taxable as a "wire and equipment service" within the provisions of Section 3465(a) (2) (B) of the Internal Revenue Code of 1939, 26 U.S.C. § 3465(a) (2) (B).

The City of Meadville, Pennsylvania, is a relatively poor television reception area because of its geographical location in relation to the transmitting television stations and because the city lies almost entirely within a valley surrounded by high hills. To make available better television reception, Meadville Master Antenna, Inc. was formed, and it constructed a large master antenna on one of the hills surrounding the city. To this antenna, a cable system was installed with special amplifying equipment being incorporated to maintain the necessary strength of the television signal. The cables were strung on utility company poles; and extended from these cables were open end lead lines to individual residences and other locations where the antenna service was desired. To these open end lead lines, the subscribers attached conventional television receivers to effect the television reception of the signals delivered by the master antenna system.

For the privilege of connecting to this master antenna system, the individual subscribers were billed in writing for installation and monthly service charges and on these charges paid to Meadville Master Antenna, Inc., an 8% tax was levied and collected by the Director of Internal Revenue under the provisions of § 3465(a) (2) (B) of the Internal Revenue Code of 1939.

The plaintiff, Gust Pahoulis, is a resident of Meadville, Pennsylvania and subscribed to the service offered by Meadville Master Antenna, Inc. During the periods April 1, 1953 through December 31, 1953 and June 1, 1954 through December 1, 1954, $70.42 was collected from him as a tax imposed under the above cited section of the Internal Revenue Code.

Timely claims for refund were filed with the District Director of Internal Revenue. These claims were rejected and this suit followed. Thereafter, plaintiff filed a motion for summary judgment and the government filed a cross motion for summary judgment. There is no real or genuine issue as to any material fact; the only issue is whether the payments made by plaintiff to Meadville Master Antenna, Inc., as installation and monthly service charges, are subject to the 8% tax imposed by § 3465(a) (2) (B) of the Internal Revenue Code of 1939.

That section provides:

"§ 3465. Imposition and rate of tax

"(a) There shall be imposed:

\*   \*   \*   \*   \*

"(2) Leased wires, etc.

\*   \*   \*   \*   \*

"(B) A tax equivalent to 8 per centum of the amount paid for any wire and equipment service (including stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, \* \* \*)."

The plaintiff contends that the type of service here involved is not a service similar to the specifically named stock quotation, burglar alarm and fire alarm services. He contends that with respect to the enumerated services, the company either originates the information or signal and causes it to be transmitted by wire to a piece of equipment, or the company provides the equipment for use on the subscriber's premises to receive the signals over a wire. In this case, Meadville Master Antenna, Inc., neither originates nor provides any television programs nor does it provide any equipment for use on the subscriber's premises to receive the television signals.

The plaintiff further contends that since the type of service here involved was not developed until well after the enactment of § 3465(a) (2) (B), Congress cannot have intended to include such service within the term "wire and equipment service".

What must be determined then is whether a community television antenna service is a "wire and equipment service" similar to those services enumerated in the statute. There is no doubt that wire and equipment are involved in this service; wires to transmit the signal and equipment to maintain and amplify the strength of the signal. Does a dissimilarity here exist because the television receiving sets are owned by the subscribers and are not provided by the company? We think that the ownership of the receiving equipment does not control the incidence of the tax. It is enough that wire and equipment are involved and the service is similar, though not identical, to those services enumerated in the statute. And the fact that the television signal does not originate with Meadville Master Antenna, Inc., but is merely relayed by it, does not create a dissimilarity. It is the service that must be similar, not the character or function of the company furnishing the service. In DeForrest Lilly and Robert R. Jones, d/b/a Mullins TV Cable Service v. United States, Civil Action No. 434, D.C.S.D.W.Va., February 2, 1956,* involving a similar television antenna system, Judge Ben Moore held that the system was a "wire and equipment service" and taxable under § 3465(a) (2) (B). We are in accord with the view of Judge Moore and think the instant service is a "wire and equipment service" fairly within the statute.

The plaintiff also contends that he is exempted from the tax by the provisions of § 3466(b). That section provides:

"(b) No tax shall be imposed under section 3465(a) (1) and (2) upon any payment received from any person for services or facilities utilized * * * in the dissemination of news * * * by means of radio broadcasting, if the charge for such services or facilities is billed in writing to such person. * * *"

This contention is without merit. That section exempts from the tax those persons, such as newspaper publishers and radio broadcasting stations, who disseminate the news and who utilize the various taxable services and facilities to collect the news. The instant tax is imposed upon the subscriber, Gust Pahoulis, not the company furnishing the service; and there is no indication whatsoever in the pleadings and affidavits that the plaintiff is a person within the exempted class who disseminates the news.

Finally, the plaintiff contends that such a tax upon a community television antenna system produces an absurd, arbitrary and discriminatory result not called for by the statute because it taxes a person "simply because he lives on the wrong side of the mountain" and utilizes the community television antenna service to secure television reception otherwise unavailable except at an exorbitant cost of constructing his own antenna the necessary height. In the exercise of its constitutional power to lay taxes, Congress may select the subject of taxation, choosing some and omitting others. Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772. A tax law is not required to operate uniformly upon all taxpayers and according to the peculiar and fortuitous circumstances of each one. Geographic, not intrinsic, uniformity is all that is required. Douglas v. Commissioner of Internal Revenue, 8 Cir., 1943, 134 F.2d 762, affirmed 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271.

The motion for summary judgment by the government will be granted; and the similar motion by the plaintiff will be refused.

An appropriate order will be entered.

* Not to be reported.